BENJAMIN L. HUNT *et al.*

*v.*

JOHN K. ROWLEY *et al.*

1. ENTRY OF PUBLIC LAND — *what land embraced in entry of fractional part of quarter.* Where the original survey of a fraction of a fractional quarter of land, as shown by the plat and field notes, embraced all the land in the quarter lying between a navigable lake and a river, without regard to an outlet connecting the lake and river and dividing the intervening fraction about equally, as one entire tract, and the number of acres marked on the plat included the land on each side of the outlet, and corresponded with the precise quantity entered by a party, of a fraction of the quarter, and but one number of the entry was marked on such fraction, and that across the outlet, it was *held,* that such entry embraced all the land in the quarter between the lake and the river, and would not be restricted to that on one side of the outlet, although the description of the part of the quarter is somewhat general.

2. The description of land in a certificate of entry and patent, though somewhat general, will be good if the land can be located by it, in connection with the field notes of the original survey. The field notes of such survey enter into and form a part of the entry or patent, as if copied into them.

3. Where the surveyor general examines the field notes in a survey of a portion of the public lands, plats and returns it as one tract only, under the instructions from the land office, it is made final and conclusive as to its being but one tract, and the quantity contained in it.

APPEAL from the Superior Court of Cook County; the Hon. SAMUEL M. MOORE, Judge, presiding.

Messrs. BAKER, OSGOOD & KEENAN, for the appellants.

Mr. WILLIAM J. CAMPBELL, for the appellees.

Mr. JUSTICE WALKER delivered the opinion of the Court:

The contest in this case grows out of two entries made on fractional section 25, township 37 north, range 14 east of the third principal meridian. It appears from the evidence that John Holbrook, on December 24, 1838, made application at the land office and entered the south-east fraction and north-west fraction of south-west fractional quarter, and the north-west fraction of the south-west fractional quarter of section 25, containing 109.33 acres, for which he paid

$136.66, and received a certificate of entry therefor, and the entry was duly marked on the tract books, and each tract was marked as sold on the proper plat in the land office, and the number of the entry was marked on the plat of the survey on each tract as No. "4957," and a patent was afterwards duly issued for the same, bearing date May 20, 1841.

On November 23, 1839, Holbrook conveyed these lands, by the same description, to Joseph Hunt, and the lands have remained vacant and unoccupied, but the taxes have been paid thereon by Hunt during his life, and since his death by his heirs. Also by Hitt and those claiming under him on his entries since he claimed to purchase on the portion he claims to have entered.

That Willis M. Hitt, on August 2, 1870, made application to the officers of the land office, and received a certificate of entry, of the south-west fractional part west of the river in south-west fractional quarter section 25, containing thirty-nine and seventy-six one-hundredths acres. And on September 24, 1871, he received a like certificate of entry for the north-west fraction of the same quarter section, containing thirty-eight and forty-six one-hundredths acres.

On page 493 will be found a certified copy of the plat of the survey, by the register of the land office.

It is claimed that Holbrook by his entry obtained title to the tract marked as containing sixteen and two one-hundredths acres south-east of the river; the tract marked as containing thirty-nine and seventy-six one-hundredths acres, west and north of the river and south and west of the outlet from the lake to the river; the tract marked thirty-eight and sixty-six one-hundredths acres north and east of the outlet and north-west of the river; and the tract marked fourteen and eighty-nine one-hundredths acres. And when these numbers are added together they aggregate the amount of 109.33 acres which Holbrook attempted to enter, and for which he paid the receiver when he obtained his certificate of entry.

Hitt claims to have entered and obtained title to the tract

PLAT OF SEC. 25, T. 37 N. R. NO. 14 EAST 3D P. M.

Scale of 40 chains to an inch.    Variation, 6° 40′ east.

marked as containing thirty-nine and seventy-six one-hundredths acres. On the other hand, it is contended that this tract was embraced in Holbrook's entry, under the description of " North-west fraction of the south-west fractional quarter of section 25," etc. Appellees urge no claim to the piece north of the outlet marked as thirty-eight and sixty-six one-hundredths acres, and only contend for the piece south marked as thirty-nine and seventy-six one-hundredths acres. This is what the court below decreed on the final hearing.

The map as certified by Surveyor General Langham, on May 13, 1836, differs materially from that of the register above given. That of the surveyor general marks the land north and west of the river as containing seventy-eight and forty-two one-hundredths acres, and the figures are placed south of the outlet, and no figures representing quantity are placed north of the outlet. And when the figures denoting quantity, placed on the portions north and south of the outlet, as shown by the register's map, are added, the result is the same quantity as is marked on the surveyor general's

map. The following is a rough copy of the surveyor general's map, which will clearly illustrate the difference in the two maps; and is sufficiently accurate to show the map, returned by him to the land office, and by which the sale to Holbrook was made:

From this map it is manifest that the survey calling for seventy-eight and forty-two one-hundredths acres was then, and at the time Holbrook made his entry, regarded as but one tract. And the field notes read in evidence clearly show that there was but one survey of that entire parcel of ground. They show that in surveying this section the east side of the lake and both sides of the river were meandered, but the outlet was not, but it was crossed both at its junction with the river on the east and the lake on the west, as would have been a rivulet or branch in making any other

survey of a section through which such a stream runs. The instructions from the general land office to deputy surveyors do not require, but on the contrary direct that such streams shall not be meandered, but shall be crossed, and their width noted in the field book. This requirement was observed in this survey.

The field notes show beyond all question that all of that portion of this quarter, whether west, north, or north-west of the river, was surveyed as one piece of ground, and was marked, when the plat was made from the field notes, as containing seventy-eight and forty-two one-hundredths acres. Had it been surveyed as two tracts, then the outlet would have been meandered to form a line separating the two. Had this been done, there would have been shown by the field notes two tracts as clearly as they now show but one. When the calls and distances are followed as given by the field notes returned to the land office, a surveyor must proceed entirely around this tract containing seventy-eight and forty-two one-hundredths acres. Had it been surveyed originally as two tracts, the field notes would unerringly lead him around each separately, which can not be done here and follow the field notes. To be surveyed as two tracts, the old survey must be, in part at least, disregarded, and to that extent a new survey must be made.

The plat certified by the surveyor general was returned to the land office, by which to make sales, and, it following the field notes, described the seventy-eight and forty-two one-hundredths acres as but one tract, and to be sold as only one. Had he intended it to be sold as two, he would have marked the number of acres each contained, or by some other appropriate method described them as separate. But failing to do so, and following the field notes as calling for only one tract, the supposition is excluded that he or the officers selling the same regarded, or could have regarded, it as other than one tract.

It then having been returned for entry as but one tract, did Holbrook so enter it? He endeavored to purchase, and

supposed he had purchased, the seventy-eight and forty-two one-hundredths acres     iged in this tract, and the receiver certified that he had paid for and entered that quantity, with the other two tracts, as this one and the other two make the 109 $\frac{33}{100}$ acres that the receiver certifies he paid for and purchased. And there was but one number of the entry when it was made, marked on this largest tract, and that across the outlet. The same number was placed on each of the other tracts. When it is considered that the largest tract had but .one number designating the quantity it contained, and that was the true number of acres both north and south of the outlet, and that according to the survey returned to the office, and the number crossing the outlet, partly north and partly south of it, can there be any doubt that Holbrook entered this seventy-eight and forty-two one-hundredths acres? Surely not.

The only matter that can be urged to raise a doubt is that the tract is described as the north-west fractional quarter of the south-west quarter of section 25, whilst, if the river be taken as the line, a portion is west and a portion is north-west of that stream. If the river is taken as a base, then every inch of the tract is west of some points on the river. And from some other points on the river every inch is north-west of the river. Standing immediately south of the north line of the quarter section, all of the land of this tract as you look westward is due west of your position, and so as you take each and every step southward along the river, until you reach the south line of the quarter, so much of the quarter as is west can not be said to be north-west. But when you reach the south-east corner of the north-east quarter of the south-west quarter of the section, all of the land in the fraction is west, or north, or between these points. But if you progress up the stream into section 36, the whole of the tract claimed by Hitt will be north-west. So it is manifest that the land is west, north-west, or north, according to the position occupied by the observer.

Had this seventy-eight and forty-two one-hundredths acres been surveyed and bounded, two tracts, then that north of the outlet might have properly been described either as the north or north-west fraction, and the other as the south or south-west, or perhaps the west fraction of the quarter, owing to whether the outlet or river be taken as the base for the description. The designation as the north-west fraction of the quarter as used in Holbrook's entry is somewhat general, and might have been more specific, but the land embraced in the seventy-eight and forty-two one-hundredths acre survey would, it is apprehended, be located by any good surveyor by that description; surely so, if given the field notes with the certificate of entry. It would seem to be impossible for him, under such circumstances, to confine it to the portion north of the outlet, as contended by Hitt. This tract answers the entry of Holbrook when the field notes are considered, and they always form the correct description of the land entered. They enter into and form a part of the certificate of entry and patent, as if copied into them in full.

But suppose Hitt's certificate of entry and the field notes of the survey were placed in the hands of a surveyor to run out and define by metes and bounds, could it be done in accordance with their calls for courses and distances? It surely could not be done, as the north end, or that portion adjoining on the outlet, would be an open line called for by no part of the survey. He could run the east, south, and westerly lines according to the field notes, but would, when he came to the outlet, have nothing calling for an east and west line to close his survey; but if he followed the calls he would cross over and go forward until he reached the north line of the quarter before he would find a call for an east and west line. The field notes render it conclusive that the surveyor general was right in platting this seventy-eight and forty-two one-hundredths acres for entry as one tract, and that Holbrook entered and obtained title to the whole of it, as his entry followed the plat, and the survey as made on

32—87 ILL.

the ground. It then follows that Hitt acquired no title to any portion of the tract by his entry.

Again, the law provides that the public lands may be entered in sections, half sections, quarter, half quarter, or quarter quarter sections. These are legal divisions, and there is no power to sell in other divisions unless the tracts be fractional. In that case the subdivision is sold as a fractional tract. Here was a tract surveyed, not as a fractional eighty or forty, but as a fractional quarter, the field notes calling for one tract only, and they were returned to the surveyor general as such, and he so platted and returned it to the local office marked to be so entered. He did not mark the number of acres of each fractional eighty or forty the tract contained, thus indicating that such subdivisions might be separately sold, but he returned it as one tract, and to be thus sold.

In 1828 the general land office instructed the register at Springfield that: "No section can be regarded as fractional in the technical sense of the act of April 24, 1820, except it be interfered with by a *navigable stream, private claim, Indian boundary line,* or a swamp which unavoidably restricts what would otherwise be the boundary lines of such section, and consequently reduces the quantity thereof to less than 640 acres." 2 Land Laws, 406. Here the notes of this survey show this section to have been fractional, within the meaning of the instructions interpreting the law.

In 1838 a further instruction was given by the general land office to the surveyor general at St. Louis: "That the law makes it the duty of the surveyor general to return the plats of surveys, etc., to this office, and the district offices; and likewise makes his action final as regards the quantities, boundaries, etc., so returned. Hence it devolves upon him to check the errors of the surveys by a thorough examination before the work leaves his office; and the simple fact of his returning the plat of survey, however the same may be certified, is taken to be *prima facie* evidence that he has made sufficient examination to satisfy his mind of the

correctness," etc. 2 Land Laws, 999. He examined the field notes in this survey, platted and returned it as one tract, and this is, as the instructions say, final as to its boundaries as but one tract, and the quantity it contained. Holbrook entered it by these boundaries and the quantity thus returned, and why is not that entry final? Any change afterwards made in the plat or of quantities surely could not divest him or his grantees of what he lawfully purchased and paid for, and for which he received a patent. Under the survey and plat he entered the whole tract as it was surveyed, and the government by the patent so conveyed it.

The decree of the court below must be reversed and the cause remanded.

*Decree reversed.*

Mr. JUSTICE DICKEY: I can not concur in the view that the description in Holbrook's entry, "the *north-west* fraction" of the south-west fractional quarter of section 25, can be held to embrace the land lying in the *south-west* corner of that quarter section. The fractional quarter in question is made fractional by the encroachment of Calumet lake on its *north-west* corner, by which is *submerged* a tract, which, in the absence of the water, would be about the same as the north-west forty of the quarter. The other three forties are separated from each other and reduced in quantity by the inlet or mouth, and other parts of the river. The north-east corner of the quarter is untouched by water, so of the south-east corner, and so of the south-west corner. These three corners are all standing, but no north-west corner is there ;

thus : It seems to me the *north-west* fraction of this quarter can not embrace the tract marked " a " which lies in the *south-west* corner of the quarter, and that is the only question in dispute.